**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TEXTRON FINANCIAL CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-885-XR |
| | § | |
| ANCHOR MARINE & TACKLE, INC., | § | |
| JEAN D. FONTENOT (a/k/a J.D. | § | |
| FONTENOT), ANDREA FONTENOT, | § | |
| MARK SAXON, and TANYA WINGATE, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT & DEFAULT JUDGMENT**

On this date, the Court considered Plaintiff's Motion for Summary Judgment (Docket No.

40) and Plaintiff's Motion for Default Judgment (Docket No. 41).  Defendants Jean D. Fontenot and

Andrea Fontenot have not responded to the motion for summary judgment, and the time to do so has

expired.  Having considered the pleadings on file and the evidence provided, the motions are

GRANTED.

**Background**

Plaintiff Textron Financial Corporation ("TFC" or "Textron") is a Delaware Corporation with

its principal place of business in Rhode Island.  TFC financed the inventory of Defendant Anchor

Marine & Tackle Inc. ("Anchor Marine"), a Texas corporation that provided retail sales of boats,

trailers, motors, and other marine products.  Under the agreement: "Textron Financial Corporation

("TFC") . . . offer[ed] financing to Anchor Marine & Tackle, Inc. ('Customer'), to be used by

Customer for Customer's Inventory ('Inventory'), subject to the provisions of this Finance Plan and

a Wholesale Security Agreement between Customer and TFC (the 'Security Agreement').ᵀ[1]  In exchange for financing the inventory, TFC obtained a security agreement for Anchor Marine's inventory.  On August 4, 1992, Anchor Marine signed a Wholesale Security Agreement with TFC, which read:

> [Anchor Marine] grants to [TFC] and its affiliates a security interest in the following property (collectively, the "Collateral"): All equipment and inventory, wherever located, in which [Anchor Marine] now or hereafter has rights, including, but not limited to, boats, trailers, motors and other marine products; all present and future attachments, accessories and accessions thereto; all spare parts, replacements, substitutions and exchanges therefor; all trade-ins relating thereto; all instruments, accounts and chattel paper arising therefrom (including leases and conditional sales contracts); and the proceeds of all of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments and/or general intangibles.[2]

TFC's Manager [of] Documentation signed the agreement on behalf of TFC and Anchor Marine's president signed on behalf of Anchor Marine.  The Security Agreement states that Anchor Marine is liable for "attorney's fees and other legal expenses" in the event of a default.[3]

On July 17, 1995, Defendants Jean D. Fontenot and Andrea Fontenot signed a guaranty agreement with TFC.  Under the agreement, TFC stated that it was "unwilling to enter into agreements with [Anchor Marine] unless [the Guarantor(s)] unconditionally guarantee[d] to Textron that the payment and/or performance of all obligations of [Anchor Marine] at any time owing to

[1]Pl.'s Ex. A-2 at 1.

[2]Pl.'s Ex. A-1 ¶ 1 at 1

[3]*Id.* ¶ 10 at 2.

2

Textron."[4]  Jean Fontenot signed another Guaranty with similar language on December 1, 2005, and Defendant Tanya Wingate signed another Guaranty with similar language on February 8, 2008.[5]

TFC Recovery Specialist Rena Waples attests that Anchor Marine defaulted on its loan by "selling numerous items of TFC-financed collateral out of trust (*i.e.*, selling items of collateral financed by TFC but failing to remit the proceeds to TFC as required by the Agreement) and (b) failing to pay TFC the amounts required under the terms of the Loan Documents."[6]  As a result of the defaults and guaranties, Defendants owe TFC $317,704.25 ($283,988.29 in principal and $33,715.96 in accrued interest) as of October 26, 2009.[7]

## Procedural History

Plaintiff filed suit against the Defendants on October 30, 2009, alleging a breach of contract.[8] Plaintiff executed service on Defendant Tanya Wingate on November 23, 2009, via personal service.[9]  Wingate did not file an answer or respond to the complaint, and the Clerk entered a default on January 6, 2010.[10]

Plaintiff attempted to serve Defendant Anchor Marine & Tackle, Inc.'s registered agent, J.D. Fontenot, Jr., at Anchor Marine's registered office, but it could not locate the registered agent at the

---

[4]Pl.'s Ex. A-3.

[5]*Id.*

[6]Aff. of Rena Waples ¶ 6 (Jul. 1, 2010) (Pl.'s Ex. A).

[7]*Id.* ¶ 7; Pl.'s Ex. A-4.

[8]Pl.'s Original Compl., Oct. 30, 2009 (Docket No. 1).

[9]Record of Executed Summons, Dec. 23, 2009 (Docket No. 5).

[10]Clerk's Entry of Default as to Tanya Wingate, Jan. 6, 2010 (Docket No. 7).

registered office with reasonable diligence.[11]   The Plaintiff served the Texas Secretary of State in

accordance with Texas law.[12]   Anchor Marine did not file an answer or respond to the complaint, and

the Clerk entered a default on March 5, 2010.[13]

Defendants Jean D. Fontenot, Andrea Fontenot, and Mark D. Saxon submitted an answer.[14]

The Court granted Plaintiff's unopposed motion to dismiss Mark D. Saxon with prejudice.[15]   On July

6, 2010, Plaintiff moved for summary judgment against Defendants Jean D. Fontenot and Andrea

Fontenot.[16]   Defendants have not responded and the time to do so has expired.   *See* L.R. CV-7(d)

(regarding deadline to respond to motion); *see also* FED. R. CIV. P. 6 (regarding calculation of

deadlines and addition of three days to deadline depending on form of service).   Plaintiff has also

moved for default judgment against Anchor Marine and Tanya Wingate.[17]

## Legal Standard

**A.    Default Judgment**

The Court considers a motion for a default judgment pursuant to Rule 55 of the Federal Rules

---

[11]Aff. of Due Diligence, Feb. 1, 2010 (Docket No. 11).

[12]Aff. of Serv. of Summons & Compl. on Anchor Marine & Tackle, Inc., Feb. 22, 2010 (Docket No. 17).

[13]Clerk's Entry of Default as to Anchor Marine & Tackle, Inc., Mar. 5, 2010 (Docket No. 26).

[14]Defs.' Original Answer, Feb. 26, 2010 (Docket No. 22).

[15]Order of Dismissal with Prejudice as to Def. Mark D. Saxon, May 19, 2010 (Docket No. 37).

[16]Pl.'s Mot. for Summ. J. Against Jean D. Fontenot (aka J.D. Fontenot) & Andrea Fontenot, Jul. 6, 2010 (Docket No. 40).

[17]Pl.'s Mot. for Default J. Against Anchor Marine & Tackle, Inc. & Tanya Wingate, Jul. 6, 2010 (Docket No. 41).

of Civil Procedure. *See* FED. R. CIV. P. 55(b)(2). Even if a defendant is technically in default, a plaintiff is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). "In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead and Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). In determining whether to grant a default judgment, relevant factors include:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The moving party must also show the amount of damages. If the claim is for a sum certain, a default judgment may be entered without a hearing. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

**B.    Summary Judgment**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(a). To obtain summary judgment, "if the movant bears the burden of proof on an issue . . , he must establish beyond peradventure *all* of the essential elements of the . . . [claim] to warrant judgment in his favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (first ellipses and bracket added). If

5

the moving party fails to meet its burden, then the motion must be denied, regardless of the non-movant's response. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). A motion for summary judgment cannot be granted simply because there is no opposition. *Ford-Evans v. Smith*, 206 Fed. App'x 332, 334 (5th Cir. 2006).

## Analysis

### A.  Default Judgment Against Anchor Marine

Under Rule 4 of the Federal Rules of Civil Procedure, a domestic corporation such as Anchor Marine must be served by "following state law for serving a summons in an action brought in the courts of general jurisdiction in the state where the district court is located or where service is made" or

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . .

FED. R. CIV. P. 4(h)(1); *see also id.* R. 4(e)(1). Anchor Marine is a domestic corporation based in Texas with "J.D. Fontenot Jr." listed as the corporation's registered agent.[18] The Texas Secretary of State is a corporation's agent for service of process if the entity does not maintain a registered agent in the state or "the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity." TEX. BUS. CORP. ACT ANN. art. 2.11(B) (Vernon Supp. 2009)

---

[18]Tex. Sec. of State, Business Organizations Inquiry: Anchor Marine & Tackle, Inc., original date of filing Feb. 29, 1988 (Aff. of Serv. of Summons & Compl. on Anchor Marine & Tackle, Inc. Ex. C).

(codified as TEX. BUS. ORG. CODE ANN. § 5.251(1) (Vernon 2009)).  Plaintiff properly served the Texas Secretary of State on February 11, 2010.[19]  *See id.* (codified as TEX. BUS. ORG. CODE ANN. § 5.252).  Therefore, TFC properly served Defendant Anchor Marine in accordance with Rule 4(h)(1) of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 4(h)(1); *accord* TEX. R. CIV. P. 106(a).  Anchor Marine has been placed on notice that TFC has filed suit against it; thereby, diminishing any prejudice arising from a default judgment in light of its failure to answer or respond to Plaintiff's complaint.[20]

The deadline for Anchor Marine to plead or respond to Plaintiff's complaint was March 4, 2010.  *See* FED. R. CIV. P. 12(a)(1)(A)(ii) (requiring an answer within 21 days of service).  The Clerk entered a default against Anchor Marine in accordance with Rule 55(a) on March 5, 2010.[21]  The grounds for default are clearly established.

There are no material issues of fact in dispute.  To succeed on a claim for breach of contract, a party must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach."  *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.], no pet.).  In this case, TFC has provided the financing agreement

---

[19]Texas Secretary of State Certification 2010-179070-1, Feb. 25, 2010 (Aff. of Serv. of Summons & Compl. on Anchor Marine & Tackle, Inc. Ex. B).

[20]The Court notes that Anchor Marine's registered agent is J.D. Fontenot, Jr., who has been personally served in this case.  Any discernible prejudice arising from a default judgment against Anchor Marine is further diminished in light of the fact that Anchor Marine's registered agent and alleged former principal has been made aware of this lawsuit in his personal capacity.

[21]Clerk's Entry of Default as to Anchor Marine & Tackle, Inc.

between it and Anchor Marine to show the existence of a valid contract.[22]  TFC performed under the agreement by providing financing, and according to the affidavit of TFC's representative, Anchor Marine breached the contract when it "s[old] numerous items of TFC-financed collateral out of trust (*i.e.*, selling items of collateral financed by TFC but fail[ed] to remit the proceeds to TFC as required by the Agreement) and (b) fail[ed] to pay TFC the amounts required under the terms of the Loan Documents."[23]  As a result of the breach, Plaintiff shows that it is owed a principal amount of $283,988.29 and accrued interest in the amount of $33,715.96 as of October 26, 2009.[24] Consequently, the evidence before the Court establishes that Anchor Marine breached its financing agreement with TFC and is liable to TFC for a total amount of $317,704.25.

There is no evidence before the Court that Anchor Marine made a good faith mistake in failing to defend this lawsuit or that excusable neglect would weigh against a default judgment. Considering that Plaintiff properly served Anchor Marine, there being no substantial prejudice, the grounds for default being established, and no material issues of fact being in dispute, the Court determines that default judgment is warranted.  The amount of damages is certain and the Court has no reason to conduct an accounting, establish any further allegations, or investigate any other matter; therefore, no hearing is necessary.  *See* FED. R. CIV. P. 55(b)(2)(A)–(D).

## B.  Default Judgment Against Tanya Wingate

TFC served Defendant Tanya Wingate on November 25, 2009, by providing her personally with a copy of the summons and complaint in accordance with Rule 4.  *See* FED. R. CIV. P.

---

[22]Pl.'s Ex. A-1, A-2.

[23]Pl.'s Ex. A ¶ 6.

[24]Pl.'s Ex. A ¶ 7, Ex. A-4.

4(e)(2)(A).  She was required to her to file an answer or otherwise respond on or before December 15, 2009.[25]  *See* FED. R. CIV. P. 12(a)(1)(A)(ii).  Wingate failed to respond.  Based on TFC's affidavit that Wingate is not an infant or incompetent person, nor fulfilling military service, the Clerk entered a default against her on January 6, 2010.[26]  Defendant Tanya Wingate was therefore placed on notice that TFC had commenced a lawsuit against her and that she was required to respond.  The grounds for default have been clearly established.

Issues of fact are not in dispute regarding Tanya Wingate's liability in this case.  It has been established that Defendant Anchor Marine is liable to TFC for breach of contract in the amount of $317,704.25.  *See supra* Part A.  Tanya Wingate signed a guaranty on February 8, 2008, to "unconditionally guarantee[] to Textron the payment and/or performance of all obligations of [Anchor Marine] at any time owing to Textron."[27]  "The guarantor's liability is measured by the principal's liability."  *Hercules Exp., Inc. v. Hallibruton Co.*, 658 S.W.2d 716, 724 (Tex. App.—Corpus Christ 1983, writ ref'd n.r.e.) (citing *Houston Furniture Distribs., Inc. v. Bank of Woodlake*, 562 S.W.2d 880, 884 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ).  There is no evidence before the Court that the guaranties have been rendered ineffective.  *See Houston Furniture Distribs.*, 562 S.W.2d at 884 (citing 38 AM. JUR. 2D *Guaranty* §§ 61, 63 (1968)).  As a result, Defendant Wingate is liable for the payment based on Anchor Marine's breach.

---

[25]Summon Returned Executed, Dec. 23, 2009 (Docket No. 5).

[26]Clerk's Entry of Default as to Tanya Wingate; *see also* Aff. of Kenneth A. Hill, counsel for Pl., Jan. 4, 2010 (Request for Entry of Default Against Tanya Wingate Ex. A, Jan. 6, 2010 (Docket No. 6)); Military Status Report Pursuant to the Service Members Civil Relief Act, Jan. 4, 2010 (Request for Entry of Default Against Tanya Wingate Ex. A-1).

[27]Pl.'s Ex. A-3.

There is no evidence before the Court that Tanya Wingate made a good faith mistake in failing to defend this lawsuit or that excusable neglect would weigh against a default judgment. Considering that Plaintiff properly served Tanya Wingate, there being no substantial prejudice, the grounds for default being established, and no material issues of fact being in dispute, the Court determines that default judgment is warranted. The amount of damages is certain and the Court has no reason to conduct an accounting, establish any further allegations, or investigate any other matter; therefore, no hearing is necessary. *See* FED. R. CIV. P. 55(b)(2)(A)–(D).

## C. Summary Judgment Against Jean D. Fontenot and Andrea Fontenot

In its motion for summary judgment, Plaintiff has provided the Court with evidence of Anchor Marine's liability and Defendants Jean D. Fontenot's and Andrea Fontenot's liability. Defendants Jean D. Fontenot and Andrea Fontenot are guarantors of the financing and security agreements between TFC and Anchor Marine. Both Jean and Andrea Fontenot signed a guaranty on July 17, 1995, and Jean D. Fontenot signed a guaranty on December 1, 2005.[28] As previously noted, a guarantor's liability is measured by the principal's liability. *See supra* Part B. There is no evidence before the Court that the guaranties have been rendered ineffective. TFC has likewise established the specific amount it is owed. *See supra* Part A. Plaintiff has established all the elements of its claim against Defendants, and Defendants have failed to respond to provide the Court with any basis that would create a genuine issue of material fact for dispute. Therefore, Plaintiff is entitled to summary judgment on its claim for breach of contract against Defendants Jean D. Fontenot and Andrea Fontenot.

---

[28]*See* Pl.'s Ex. A-3.

**Conclusion**

Plaintiff's motion for default judgment against Defendants Anchor Marine & Tackle, Inc. and

Tayna Wingate is GRANTED.  Plaintiff's motion for summary judgment against Defendants Jean

D. Fontenot and Andrea Fontenot is GRANTED.

It is so ORDERED.

SIGNED this 26th day of July, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

11